IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2005 Session

# ROKETA MASON, A MINOR BY YOLANDA MASON, AS NEXT FRIEND AND NATURAL MOTHER, AND YOLANDA MASON, INDIVIDUALLY v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 03C-234      Hamilton V. Gayden, Jr., Judge**

---

**No. M2003-03108-COA-R3-CV - Filed September 30, 2005**

---

Plaintiff, a tenth grade high school student, was attacked while riding the school bus. She was seriously injured by another student using a razor provided by the school as part of the cosmetology curriculum. Plaintiff filed this action against the school system alleging negligence for failure to properly supervise students using dangerous instructional instruments and for violation of the school's zero tolerance policy by permitting students to take razors to and from school, thereby permitting the attacker to have the razor on the school bus where the attack occurred. Following a bench trial, plaintiff was awarded a judgment of $80,000 from which defendant appeals. Finding the school system is not liable for the injuries suffered by the plaintiff, we vacate the judgment and remand with instructions to enter an order dismissing the action.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

John L. Kennedy and Lora Barkenbus Fox, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville and Davidson County, Tennessee.

Joseph P. Bednarz, Sr., and Joseph P. Bednarz, Jr., Nashville, Tennessee, for the appellees, Roketa Mason and Yolanda Mason.

## OPINION

Roketa Mason (Plaintiff) suffered severe cuts to the face during a fight with another student, Brittany Moore (Moore), while riding the school bus home at the end of the school day at Whites

Creek High School.[1]  The assault occurred on January 25, 2002.  Both girls were tenth grade students, but they did not know each other prior to the day of the assault.[2]  While neither Plaintiff or Moore were exemplary students, neither had a history of assault or violent behavior prior to the event at issue.

At the end of the school day, Moore and Plaintiff separately entered the school bus to go home.  Plaintiff was already seated when Moore entered the bus.  An argument began while Plaintiff was sitting by one window and Ms. Moore sitting by another window.  Both students had someone sitting next to them on the bus.  The two argued briefly, then Moore reached over the students sitting between them and grabbed Plaintiff with Plaintiff hitting Moore in response.  Moore proceeded to pull a razor blade from her pocket and, using it as a weapon, cut Plaintiff.  Plaintiff was taken to Vanderbilt University Medical Center Emergency Room by ambulance where she underwent surgery receiving over one hundred stitches.  A permanent scar from the laceration remains.

The razor Moore used to assault Plaintiff was one of many instruments in the cosmetology kit provided by the cosmetology school teacher at Whites Creek High School to cosmetology students.  The cosmetology kit – which included razor blades (Shaper Blades), scissors (Ice Tempered Shear), cuticle pusher,  among other instruments –  was an integral part of the cosmetology curriculum at the school.  The cosmetology students were permitted to carry the cosmetology kits to and from school so the students could do homework.  Prior to permitting the students to take the kits to and from school, the cosmetology teacher provided safety instructions on the various cosmetology instruments in the kit and tested their knowledge of the safety instructions. The teacher specifically explained that if a student used the cosmetology instruments, the razor in particular, other than as instructed in class, the student would be subject to the school's "zero tolerance" policy which expressly prohibited students from possessing razors and other objects used for the purpose of going armed.[3]  One of the specific mandates the teacher imposed upon the cosmetology students was to keep the safety shield on the razors and the razors in the cosmetology kit while transporting the kit.  As the teacher explained, she told them:

> Remember, zero tolerance don't [sic] exempt you because you have the implements in your kit – or you have them out.  You must have them in your kit.  If they are caught out, then you are now maybe [sic] suspended for having it out of the kit.  It must stay in the kit at all times unless for instructional purposes in the class.

---

[1]An initial conflict between the girls occurred earlier in the day on the bus ride to school. Hostile words were exchanged over another student's boots but no physical contact was threatened or engaged in at that time. Reference to this morning incident on the bus ride home precipitated the fight at issue.

[2]Testimony by other students revealed the girls did not know each other prior to the day of the assault.

[3] Defendant has a "zero tolerance" weapons policy in the student handbook banning weapons, including razor blades, from the school campus.  Violation of the policy could result in expulsion from the school for a year.

Only after the teacher instructed and tested the students on the safe and proper use and care of the cosmetology kit did the teacher permit the students to take their cosmetology kits from the classroom.

Plaintiff sued the Metropolitan Government of Nashville Davidson County of Tennessee (Defendant) based on Tenn. Code Ann. § 29-20-205, the Governmental Tort Liability Act, alleging liability based on the negligent acts and omissions of an employee, the cosmetology school teacher at Whites Creek High School. Following a bench trial, the trial court found Defendant liable because, as it stated, "the actions of [the teacher], in allowing students to carry straight razors home with them on the bus, was an operational act of negligence and contrary to the school's Zero Tolerance Policy" and awarded Plaintiff damages in the amount of $80,000. Defendant appeals contending the attack was not foreseeable.[4]

## STANDARD OF REVIEW

The trial court heard this case without a jury. The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

Defendant contends the trial court erred by finding it negligent because Moore's attack on Plaintiff was not foreseeable. The trial court found Defendant liable, reasoning the event was foreseeable "in this day and time" because "the students and atmosphere have changed." We have determined the trial court applied an erroneous "foreseeability" standard that produced an erroneous conclusion of liability.

---

[4]Defendant raises two issues on appeal. The first issue, which we found to be dispositive, is the subject of this opinion and is fully addressed in our analysis. The second issue pertained to comparative fault. Our determination that Defendant is not liable renders the comparative fault issue moot.

Society places a significant responsibility upon school officials to provide a safe environment for our children, the students. However, such a responsibility does not make our school officials insurers of the safety of its students. To the contrary, teachers and school districts are not expected to be insurers of the safety of students. *King by King v. Kartanson,* 720 S.W.2d 65, 68 (Tenn. Ct. App. 1986); *Roberts v. Robertson County Board of Education,* 692 S.W.2d 863, 872 (Tenn. Ct. App. 1985); *Cadorette v. Sumner County Board of Education*, No.01A01-9510-CV-00441, 1996 WL 187586, at *2 (Tenn. Ct. App. April 19, 1996). Moreover, Tennessee does not impose upon teachers the duty to anticipate or foresee the hundreds of unexpected student acts that occur in our public schools. *Roberts,* 692 S.W.2d at 872. This is particularly true when injury results from conduct that constitutes a radical departure from reasonable conduct. *See Doe v. Linder*, 845 S.W.2d 173, 179 (Tenn. 1992); *Roe v. Catholic Diocese*, 950 S.W.2d 27, 31-32 (Tenn. Ct. App. 1996).

A claim of negligence requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (*citing Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)). Duty is the legal obligation owed by the defendant to the plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. *McCall*, 913 S.W.2d at 153 (*citing Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994); *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992), perm. to appeal denied, (Tenn. 1992); W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS, § 53 (5th ed. 1984)).

If it is determined that a plaintiff's injury would not have occurred but for the defendant's breach of a duty, the question then is whether the defendant's breach was a proximate cause of the plaintiff's injury, which, as our Supreme Court noted in *Hale v. Ostrow*, is different from a cause in fact of the injury. 166 S.W.3d 713, 718-719 (Tenn. 2005).

> Proximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct. *Haynes*, 883 S.W.2d at 612. "Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established." *Kilpatrick*, 868 S.W.2d at 598.

*Hale,* 166 S.W.3d at 719. While a defendant in a negligence action cannot be found liable unless the defendant's conduct was the proximate cause of the plaintiff's injuries, the defendant's conduct need not be the only conduct causing the injury. As long as the defendant's conduct is a substantial factor causing the injury, that conduct need not be the sole cause nor the last cause of the injury. *Lancaster v. Montesi*, 390 S.W.2d 217, 221 (Tenn. 1965); *Kroger Co. v. Giem*, 387 S.W.2d 620, 626 (Tenn. 1964).

4

The focus of this appeal is the issue of foreseeability. Foreseeability is an element of the proof of proximate cause. *Ford Motor Co. v. Eads*, 457 S.W.2d 28, 32 (Tenn. 1970). The foreseeability requirement is one prong of a three-pronged test to determine proximate cause. The three-pronged test to determine proximate causation is as follows:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. *See Smith v. Gore*, 728 S.W.2d 738, 749-50 (Tenn. 1987); *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28, 32 (Tenn. 1970); *Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 436 S.W.2d 864, 867 (Tenn. 1969); *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217, 221 (Tenn. 1965); *Roberts v. Robertson County Bd. of Ed.*, 692 S.W.2d 863, 871 (Tenn. Ct. App. 1985); *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 541-43 (Tenn. Ct. App. 1981); *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 280-81 (Tenn. Ct. App. 1977).

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991). If the injury giving rise to the action could not have been reasonably foreseen or anticipated, then there is no proximate cause and thus no liability for negligence. *Ray Carter, Inc. v. Edwards*, 436 S.W.2d 864, 867 (Tenn. 1969). However, the foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. *McClenahan*, 806 S.W.2d at 775 (*citing Roberts,* 692 S.W.2d at 871; *Wyatt,* 566 S.W.2d at 281.)

The trial court's assessment that the assault on Plaintiff by Moore was foreseeable "in this day and time" because "the students and atmosphere have changed" is consistent with jurisdictions holding that misconduct is to be expected whenever a group of students is brought together. *See Hoff v. Vacaville,* 968 P.2d, 522, 534 (Cal. 1988) (observing the "commonly known tendency" of students to engage in immature behavior that could be dangerous to themselves or peers); *Moore by and Through Knight v. Wood County Board of Education*, 489 S.E.2d 1, 6 (W. Va. 1997) (stating that the immature behavior of children must be taken into account in the supervision of children); *Dailey v. Los Angeles Unified School Dist.*, 460 P.2d 360 (Cal. 1970) (finding that "roughhousing" and "horseplay" are normal activities for high school boys and thus it is a function of proper supervision to control such behavior).

Other jurisdictions, such as New York, hold that misconduct is not to be anticipated in the absence of proof of prior misconduct. *See Smith v. East Ramapo Central School District,* 741 N.Y.S.2d 251, 252 (N.Y. App. Div. 2002) (finding that even though school had notice of two other after school event assaults, the school could not have foreseen that these two particular students would assault the plaintiff); *Brown v. Board of Education of Glen Cove Public Schools*, 700

N.Y.S.2d 58, 60 ( N.Y. App. Div. 1999) (finding unforeseeable where there was no previous history of attack between the two sports teams, or between the victim and the two girls who attacked her); *Busby v. Ticonderoga Cent. School District*, 684 N.Y.S.2d 709, (N.Y. App. Div. 1999) (finding isolated statement by attacking student, just prior to incident unforeseeable as relations between the attacker and victim were good).

Tennessee follows the latter, more conservative foreseeability approach that student misconduct is not to be anticipated absent proof of prior misconduct. *Kindred v. Board of Education of Memphis City Schools*, 946 S.W.2d 47 (Tenn. Ct. App. 1996) (holding that attack on plaintiff by fellow student was not foreseeable where similar threats were made by students but never carried out, and the attacker had not been known to have a weapon or cause trouble at the school); *Chudasama v. Metropolitan Government of Nashville and Davidson County,* 914 S.W.2d 922 (Tenn. Ct. App., 1995 (holding locker room fight was not reasonably foreseeable because the coach was unaware of any negative history between the students and there was no record of disciplinary problems between the students involved in the fight). Tennessee, also, has adopted the reasonable person standard in cases involving the safety of students. *Roberts,* 692 S.W.2d at 870-71.

*Kindred v. Board of Education of Memphis City Schools*, 946 S.W.2d 47 (Tenn. Ct. App. 1996), *Chudasama v. Metropolitan Government of Nashville and Davidson County,* 914 S.W.2d 922 (Tenn. Ct. App., 1995) and *Roberts v. Robertson County Board of Education, supra*, are three of the leading cases in Tennessee that we find particularly relevant in analyzing this case. In *Kindred* a student was collecting admission to a faculty-student basketball game at the door. A former student refused to pay the admission and exchanged words with the student collecting the admission threatening, "I'll be back." *Id.* at 48. The former student returned with a weapon and shot the student collecting admission to the school event. A coach and the school principal testified that the former student, Oliver, was not known to carry weapons or cause any trouble at school. This court found the event was not foreseeable, explaining:

> The evidence at trial supports these findings. Specifically, Coach Anderson and Principal Hawkins both testified that incidents involving students grabbing, pushing, and threatening other students occurred quite often at the school. Coach Anderson testified that he constantly heard students make threats similar to the threat made by Oliver in this case, but, in the coach's experience, this was the first time a student actually had carried out such a threat. *See, e.g., Rawls v. Bulloch County School District*, 223 Ga.App. 234, 477 S.E.2d 383, 385 (1996) (holding that attack on plaintiff by fellow student was not foreseeable where plaintiff testified that student's threat to "kill" plaintiff was not unusual among students in plaintiff's school and plaintiff did not take student's threat seriously). Further, Coach Anderson had never known Oliver to have a weapon or to cause any problems around the school. Principal Hawkins corroborated Coach Anderson's testimony, stating that, based on his knowledge of Oliver as a former student, the principal would not have expected Oliver to carry out his threat. *See, e.g., Cox v. State*, 844 S.W.2d 173, 178 (Tenn. Ct. App. 1992) (holding that, given complete lack of evidence of inmate's propensity for

6

violent acts, evidence did not preponderate against finding that inmate's attack on claimant was not foreseeable). Accordingly, we reject Plaintiff's argument that the trial court erred in declining to impose liability against Defendants under principles of common-law negligence.

*Id.,* 946 S.W.2d at 49-50.

In *Chudasama*, a fight broke out in an unsupervised locker room after a teacher dismissed the students from his class before the end of the period. The injured student sued the school system contending the fight and resulting injuries were foreseeable and the proximate result of negligent supervision by the principal and a teacher, who also served as a coach. Specifically, the plaintiff contended the coach failed to adequately supervise the girls' locker room and that he violated school policy by allowing his students to leave class fifteen minutes early to go to the locker room. This court found the coach's negligence in letting his students go to the locker room early in violation of a school rule insufficient to impose liability on the school system, explaining the plaintiff must also show "that it was foreseeable that injury to a student would occur as a result of the coach's actions in order for liability to attach." *Id.*, 914 S.W.2d at 925. As the court more fully explained:

> With the benefit of hindsight, we can now see that if Mr. Summral had restrained the girls in his class from going to the locker room for as long as possible on the day in question, Jennifer's ordeal would have been shortened, though it might not have been prevented.

> However, even conceding, arguendo, that the coach was negligent in letting his students go to the locker room earlier than he was obliged to, and that his negligence was one of the causes of Jennifer's injuries, the plaintiff must also show that it was foreseeable that injury to a student would occur as a result of the coach's actions in order for liability to attach. *See Lancaster,* 390 S.W.2d at 221.

> But there is no evidence in the record that Mr. Summral was aware of the antagonism between Jennifer and Starr, or that he knew a fight between the two girls was widely anticipated by his students. There was also no record of problems between Jennifer and the girls who actually attacked her, and the locker room had previously been the site of only two fights in nine years. It would place an unrealistic burden of foresight upon the teacher to conclude that he should have anticipated the events that occurred.

*Id.*, 914 S.W.2d at 925.

As stated earlier, Tennessee does not impose upon teachers and school systems the duty to anticipate or foresee the hundreds of unexpected student acts that occur daily in our public schools. *Roberts*, 692 S.W.2d at 872 (citation omitted); however, we have no hesitation in holding a teacher or local school system to the duty of safeguarding students from reasonably foreseeable dangerous

7

conditions including the dangerous acts of fellow students. *Id*. In *Roberts*, we concluded that the evidence supported a finding the shop teacher was negligent and his failure to furnish adequate instruction and supervision to his vocational agriculture students was the proximate cause of Roberts' injuries. We identified four aspects of the teacher's conduct that supported this conclusion.

> First, [the teacher] had a practice of permitting inexperienced freshman students to remain in the shop area unsupervised in the presence of fully operational power driven equipment which, if used improperly, could cause serious injury. Second, there is no proof that [the teacher] ever instructed his students in the proper techniques for assisting others in operating shop machinery. Third, there is no proof that [the teacher] ever gave his students any instruction concerning the ways a drill press could cause injury if it was not used properly. While there is proof that [the teacher] demonstrated two of the many ways that a drill press could be used, neither [the teacher] nor any of his students testified that any instruction was given concerning the other ways that a drill press, if improperly used, could cause injury. Fourth, [the teacher] gave Yount a drill bit knowing that [Yount] had never used the drill bit before and that he was eager to use it during that class period.

The evidence in *Roberts* further supported the conclusion the teacher was aware Yount, a fourteen year old, did not know how to use the longer drill bit properly when he gave it to him and the drill bit could be dangerous if used improperly. The evidence also established the teacher had direct knowledge Yount intended to use the drill bit at that time. Rather than keeping the drill bit and telling Yount he would come into the shop area momentarily to supervise his work, the teacher gave Yount the instrument and left the classroom leaving Yount unsupervised. With the foregoing evidentiary backdrop, we concluded:

> Providing the drill bit to Yount, knowing at the time that the shop equipment was fully operable, that other students were working in the shop area without supervision, and that Yount was eager to use the drill bit constitutes a breach of [the teacher's] duty to supervise his students properly and provides a sufficient basis for a judgment in Roberts' favor.[5]

*Roberts*, 692 S.W.2d at 872.

---

[5] "In this case for example, Roberts' injury would have been prevented had [the teacher] taken the simple precaution of not giving Yount a drill bit he did not know how to use or had [the teacher] adopted and enforced a rule prohibiting students from being in the shop when he was not present. The injury would also have been avoided had [the teacher] been provided with the central ability to render all machines inoperable while he was not in the shop area." (footnote in *Roberts* opinion)

8

Here, Plaintiff's foreseeability argument primarily hinges on the contention that the teacher knowingly and negligently permitted Moore to violate the zero tolerance policy which expressly prohibited razors. We find Plaintiff's reliance on the zero tolerance policy to be misplaced.

As Plaintiff contends, the zero tolerance policy expressly prohibits razors; however, it also prohibits "any object" possessed by a student "for the purpose of going armed." The policy provides:

> A student shall not knowingly possess, handle, transmit, or use a weapon . . . knives with blades 2 ½ inches or more in length, switchblade, box cutter, razor blade or other knife-like instrument utilizing a razor blade. Furthermore, a student shall not knowingly possess any object for the purpose or intent of going armed.

No teacher should knowingly permit a student to possess an object at school for the purpose of going armed, yet some educational instruments – objects – that are permitted, if not required, for use in the classroom may be misused by students as weapons. Though it is inartfully expressed in the policy, the zero tolerance policy contemplates a dual purpose of some objects: one that is permitted, the other prohibited. This is evident from the modification of the term "any object" to exclude objects used "for the purpose or intent of going armed." The modification indicates that some objects, although potential weapons, are not prohibited by the policy if possessed by students for appropriate purposes, such as part of the curriculum. Thus, the policy does not prohibit a student from possessing any and all objects which may be misused as weapons. Nevertheless, the judgment of the cosmetology teacher in allowing her students to possess straight razors outside of the classroom, even if contained in cosmetology kits, is questionable, if not negligent.

There are, however, at least two fallacies with Plaintiff's reliance on the zero tolerance policy. One fallacy is that the policy applies to a number of "objects" students are permitted to possess at school under certain circumstances. A baseball bat is one such object. A baseball bat is prohibited by the same policy if it is possessed for the purpose of going armed, yet it is permitted if used in conjunction with school intramural activities or the baseball team. Students may carry a number of objects to and from school that could be used as a weapon. Thus, an object that is permissible for the student to possess, because it is part of the student's curriculum or extracurricular activities, can become a prohibited object the moment the student chooses to use it as a weapon, for the purpose of "going armed." Though the baseball bat is not expressly prohibited by the policy, the same baseball bat is prohibited if possessed as a weapon, just as the policy prohibits razors.

Another fallacy with Plaintiff's reliance on the zero tolerance policy is if we concede, arguendo, that the cosmetology teacher was negligent in letting her students transport the cosmetology kit to and from school, Plaintiff must show it was foreseeable that injury to a student would occur as a result of the cosmetology teacher's actions in order for liability to attach. *See Lancaster*, 390 S.W.2d at 221.

Is it foreseeable, in this day and time, that some student somewhere might use a bat as a weapon to assault another student at school? The answer to the question is yes. Is it foreseeable,

in this day and time, that some student somewhere might use a razor from their cosmetology kit as a weapon to assault another student at school? The answer to this question is also yes. The foreseeability standard stated in the two questions above appears to be the standard applied by the trial court; however, it is not the foreseeability standard to be applied in Tennessee. The Tennessee standard is whether it was foreseeable that a student like Ms. Moore – who had received proper instruction as to the safe use and transportation of the cosmetology kit, who had been tested on those instructions, who had been warned that an improper use of the kit or its contents could violate the zero tolerance policy, and who had no history of violence – would take the razor from the cosmetology kit and use it as a weapon to criminally assault another student at school.

As in the *Kindred* case, both the cosmetology teacher and the principal at Whites Creek High School were surprised by Moore's conduct and did not expect this type of behavior from her. *Kindred,* 946 S.W.2d at 49. The principal testified to his surprise, upon arrival at the scene, to see Moore detained as the aggressor. Based on Moore's disciplinary record and the principal's experience with her, the principal was shocked by her involvement in a violent act. The cosmetology teacher had no indication of violent or aggressive conduct through the course of her dealing with Moore in her classroom nor was she aware of any dangerous or violent behavior by Moore. The teacher spoke with Moore on one occasion about talking too much in class but Moore was respectful, obedient and worked well with others in the course of the cosmetology class. Based on her conduct in the classroom, the teacher observed no behavior indicative of an aggressive or violent tendency.

Factors this court found significant in *Chudasama* are present here. The cosmetology teacher had no knowledge of antagonism between the two girls and neither student had a disciplinary record indicative of violent behavior. *Chudasama*, 914 S.W.2d at 925. There is no evidence to indicate the teacher knew or should have reasonably foreseen a violent attack by Moore on Plaintiff or another student. The teacher's lack of knowledge of antagonism or conflict was supported by other students who testified the girls did not know each other prior to the day of the assault. Moreover, neither Moore nor Plaintiff had a history of violence and only Moore had received disciplinary action, though none of it pertained to violent behavior.

We also find significant, as we did in *Chudasama*, that during the cosmetology teacher's thirty-four year career, she never experienced a student removing a razor from the classroom for an unauthorized purpose and no student used a cosmetology razor as a weapon even though she had always permitted her students to transport essentially the same cosmetology kit, including razors, to and from school. 914 S.W.2d at 925 (deeming it significant that only two fights had occurred in the locker room in the nine years prior to the incident).

The cosmetology teacher instructed Moore, along with all cosmetology students, on safety for all instruments in the cosmetology kit and tested them on their knowledge of those safety instructions. The teacher additionally explained that use of the cosmetology tools for any reason other than as instructed in class could subject the student to the zero tolerance policy prohibiting razors at school. It was only after the teacher had provided safety instructions and tested Moore on these instructions, did the cosmetology teacher allow Moore to take the kit from the classroom.

10

These facts are significantly different from the facts in *Roberts* where the shop teacher was found to be negligent and the injury was found to be foreseeable. 692 S.W.2d at 872. In *Roberts* the shop teacher did not instruct the student on safety procedures and he gave the fourteen year old student the large drill bit knowing the student intended to promptly use it in the drill press.

As significant and tragic as the injuries to Plaintiff are, it was not foreseeable that Moore would use the razor from the cosmetology kit to assault Plaintiff; thus, the cosmetology teacher's negligence in permitting students to transport the cosmetology kits was not the proximate cause of Plaintiff's injuries. To the contrary, the intentional, criminal assault by Moore was the proximate cause of Plaintiff's injuries.

### IN CONCLUSION

Therefore, we vacate the judgment of the trial court and remand with instructions to enter an order dismissing the action. Costs of this appeal are assessed against appellees, Roketa Mason and Yolanda Mason.

_____
FRANK G. CLEMENT, JR., JUDGE

11