IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 25, 2006

## BROOKE RATHNOW b/n/f/ RICH and DIANE RATHNOW v. KNOX COUNTY, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-730-04     Dale C. Workman, Judge**

---

**No. E2005-02515-COA-R3-CV - FILED MAY 30, 2006**

---

A high school student was injured when she fainted after viewing a first aid instructional video depicting simulated wounds that was being shown in one of her classes. The student, through her parents, sued Knox County and the Knox County Board of Education under the Tennessee Governmental Tort Liability Act, alleging that the teacher supervising the class was negligent in allowing her to leave the classroom unattended because it was foreseeable that she might be suffering a physical reaction to the video and that she might faint. The trial court entered judgment in favor of the plaintiff and awarded her damages in the amount of $30,000. The defendants appeal, arguing that plaintiff's fainting was not foreseeable and that, even if the trial court was correct in its finding of negligence, the trial court awarded excessive damages. Upon our determination that the harm suffered by the student was not reasonably foreseeable, we reverse the judgment of the trial court and dismiss this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Cause Dismissed**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., concurred in a separate opinion.

Martha Haren McCampbell, Knoxville, Tennessee, for the appellants Knox County and the Knox County Board of Education.

William S. Lockett, Knoxville, Tennessee, for the appellee Brooke Rathnow b/n/f Rich and Diane Rathnow.

**OPINION**

*I. Background*

In December of 2003, the appellee, Brooke Rathnow, a 16-year-old sophomore at Bearden High School in Knoxville, was attending a required class entitled "Life Time Wellness" taught by Jennifer Allen ("Coach Allen"). One of the suggested resources for the Wellness class was a first aid instructional video produced by the American Red Cross that depicts simulated accidents and injuries.

On December 8, 2003, Coach Allen was showing this first aid video to Ms. Rathnow and the other students attending her Wellness class. Artificial blood is used in some scenes in the video, and Coach Allen testified that before showing the video to students, she always advises them of this and tells them that they can put their heads down on their desks and close their eyes if they feel like it. At one point in the video, an actor appears to cut his arm with an electrical circular saw. This scene is approximately one minute in duration and includes sporadic, and sometimes blurred, images of what appears to be blood on the actor's forearm interspersed with images of other actors portraying the victim's co-workers rendering aid. Ms. Rathnow states that when she viewed this scene, she "felt faint and lightheaded and dizzy and nauseous." She testified that she told two girls sitting next to her that she felt "nauseous" and then she stood up and asked Coach Allen for permission to "go outside and get some cold air." In response, Coach Allen asked Ms. Rathnow if she was okay, and Ms. Rathnow replied "yes" (Ms. Rathnow asserts that she does not recall if Coach Allen asked her if she was okay, but does not believe that she did; however, the trial court appears to have found that Coach Allen did ask Ms. Rathnow if she was okay and that Ms. Rathnow responded "yes").

The school's policy allowed a teacher the discretion to permit a student to leave the classroom, and Coach Allen granted Ms. Rathnow's request. Ms. Rathnow went outside and, after an undisclosed period of time, she fainted and fell to the ground. When she fell, a piece of her left front tooth broke off and became embedded in her lower lip. After the fall and on that same date, Coach Allen filled out an accident report which states in part as follows:

> Brooke asked to step outside. I said, yes. I was watching her thru the
> window. I was just going out to see how she felt when I heard her fall,
> (I thought). I went to check, sent for help, got her comfortable, called
> for admi. and parents  -  sent to office in wheelchair w/ officers.
> parents picked up.

As a result of the injury she received, Ms. Rathnow subsequently incurred medical expenses and was left with a facial scar.

On December 7, 2004, Ms. Rathnow, by her parents, Rich and Diane Rathnow, filed a complaint in the Circuit Court for Knox County against Knox County and the Knox County Board of Education.  The complaint sought $80,000 in damages for injuries allegedly arising out of the above described incident and charged that it was negligent to allow Ms. Rathnow to leave the classroom by herself, "especially after she had already indicated that the graphic nature of the first aide [sic] movie had caused her to feel faint and nauseous."  The case was tried without a jury, after which the trial court entered judgment in favor of the plaintiff and awarded her damages in the amount of $30,000.  The defendants appeal.

## II. Issue

The sole issue we address in this appeal is whether Ms. Rathnow's fainting and subsequent fall were reasonably foreseeable under the circumstances of this case.

## III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary.  Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings.  *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999).   The trial court's conclusions of law are accorded no presumption of correctness.  *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## IV. Analysis

In order to sustain a cause of action for negligence, a plaintiff must prove the following: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.  *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).  The element of foreseeability derives from the test for "proximate or legal cause," as articulated by the Tennessee Supreme Court in *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991):

> Taken as whole, our cases suggest a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) *the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.*

(Emphasis added).

Accordingly, proof of foreseeability is of critical importance in a negligence case such as the one now before us. If an injury giving rise to a cause of action for negligence could not have been reasonably foreseen or anticipated, then there is no proximate cause and, thus, no liability for negligence. *Ray Carter, Inc. v. Edwards*, 436 S.W.2d 864, 867 (Tenn. 1969).

Foreseeability is ordinarily a question of fact. *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891, 900 (Tenn. 1996). As noted by the Court in *McClenahan*, even though the exact manner in which the injury took place was not foreseen, if the general manner in which the injury occurred could have been foreseen, or "through the exercise of reasonable diligence should have [been foreseen]" the foreseeability requirement will have been met. "It is sufficient that harm in the abstract could reasonably be foreseen." *Id.* However, "the harm must be foreseeable from the vantage point available to the defendant at the time that the allegedly negligent conduct occurred." *Wingo v. Sumner County Board of Education*, No. 01A01-9411-CV-0051, 1995 WL 241327(Tenn. Ct. App. M.S. April 26, 1995), at *3. And "the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the defendant's power more probably than not would have prevented the injury." *Eaton v. McClain*, 891 S.W.2d 587, 594 (Tenn. 1994).

With specific regard to the standard of care demanded of a school teacher, we noted as follows in *King by King v. Kartanson,* 720 S.W.2d 65, 68 (Tenn. Ct. App. 1986):

> Teachers in local school districts are not expected to be insurors of the safety of students while they are at school. The standard of care is that of reasonable and ordinary care under the circumstances. This standard of care varies according to the nature of the persons to whom the duty is owed and the circumstances under which the parties find themselves. The extent to which a teacher must supervise the activities of his or her students must be determined with reference to the age and inexperience of the students, their maturity, and the dangers to which they may be exposed.

(Citations omitted).

After presentation of proof and argument of counsel, the trial court in the case before us announced its findings and conclusions, which included the following:

> The teacher does indicate that prior to even showing this, just her personal experience, she was aware, ... from her own personal perspective, what she has heard reported by others, that the content of this particular video may be upsetting to certain of her students.

At least, and as she says, she tells them that they can put their heads down or close their eyes if they don't want to see this depiction.

She is on notice there can be some reaction by her students prior to even showing the video. Then she starts showing the video. A student, who she says is an excellent student, had never been a bit of problem, and there is no reason for this student to be doing anything other than absolutely dealing with her honestly, says, I need to leave the room.

She asks, Are you all right?, indicating some concern about her physical well-being, although, not knowing specifically what. The student says, Yes, I just need some fresh air.

With that, I find this teacher is put on notice that this student may be suffering from some physical malady.

The reference to the fresh air is, I think a reasonable person, would conclude the student is being affected by the content that['s] on the video. You might think other things.

With the video being shown at the same time and with the reaction during the video, I think at that point the teacher is on notice that this student, although this student didn't say absolutely, the teacher is on notice of maybe having suffered some reaction, possibly.

She does inquire and says; "Are you all right?" The student says, "Yes," but then she follows up, "I need the fresh air."

At that point I don't think the teacher specifically could foresee that this young lady is going to go out and faint with a serious injury.

The teacher is on notice that the student may be faint, she may be sick at her stomach. There is something going on, and that the teacher take some action as a reasonably prudent teacher to deal with the situation.

She could have said, Mary, Sue, or another student who were sitting with her, "Go with Brooke outside." She could have said, "The rest of you all watch the video," and walked out with her.

She did not do that, but she is not insensitive and not ignoring this young lady. She said as best she could, she tried to watch her out a window where she could see her outside.

Something that creates a great deal of difficulty for the Court is that there is some passage of time, and no one tried to quantify that, how long a period of time there was between when she goes outside and the fall.

The longer that period would be, the less anxious the teacher reasonably could be of something is about to happen. Because as pointed out, this student after saying, I need to go out, negotiates a dimly, not black, but a dimly lit classroom. The student opens the door and gets outside by herself. The student evidently stands for some period of time, which is not delineated, outside.

As I said, the longer that period goes, then the Court would find the less the teacher reasonably could be concerned about something is going to happen to harm this student.

The teacher says she is getting ready to go outside and check on her. So evidently, there has not been enough time to satisfied [sic] the teacher that everything is okay. Then the teacher hears the fall.

With those facts, the Court finds the teacher should have reasonably anticipated this could have happened. Not that it was going to happen or would happen, but that this could have happened, that she could faint, which is a reaction to the graphic video.

Another example of a thing she might have done, is she could have asked specifically, do you feel faint; instead of standing up and walking around, which makes the blood go from the head, it makes you more likely to faint.

She could have said, Well, you need to sit down over this, instead of trying to go outside, you need to sit.

So I find that the teacher was negligent in how she handled this situation. That does not mean she is a bad teacher. The Court is not unmindful this is the first time this has ever happened to her.

With 8,000 high school students, maybe this is the first time ever, at least to the knowledge of anybody in Knox County, this has ever happened.

Students are all different. Some are more sensitive than others. So I think that, the conversation and knowing the kind of student she is dealing with, put the teacher on notice that something was up that she needed to deal with this student. The teacher needed to take some action rather than letting the student go out by herself with no other instructions or assistance.

In summary, the trial court found that even before Ms. Rathnow asked to go outside, Coach Allen was on notice that there "can be some reaction" by a student as a result of viewing the video. The trial court next found that after Ms. Rathnow asked to be excused, Coach Allen was on notice that Ms. Rathnow "may be suffering from some physical malady" - "maybe having suffered some reaction, possibly." The trial court then determined that, after Ms Rathnow assured Coach Allen that she was okay, Coach Allen could not "specifically ... foresee that [Ms Rathnow] was going to go out and faint," but that Coach Allen was on notice that Ms. Rathnow "may be faint" or "sick at her stomach," that "[t]here is something going on."

We respectfully disagree that the trial court's findings support its ruling that Coach Allen was negligent under the circumstances. We have reviewed the subject video, and we do not believe the scene that allegedly caused Ms. Rathnow to faint was sufficiently graphic or disturbing to place a reasonable person on notice that an individual viewing it would react as Ms. Rathnow did. Even if it should have been apparent to Coach Allen that Ms. Rathnow was suffering from some unspecified discomfort when she asked to go outside, we do not agree that it follows that it also should have been apparent to Coach Allen that Ms. Rathnow was at risk of fainting and injury if allowed to leave the class room unassisted. While the findings of the trial court may support the conclusion that Ms. Rathnow's fainting and fall were a possibility at the time Coach Allen allowed her to go outside, these findings do not support the conclusion that those reactions, even if attributable to viewing the video, were a reasonably foreseeable probability. Our determination in this regard is supported by our decision in *Cadorette v. Sumner County Board of Education, et al.*, No. 01A01-9510-CV-00441, 1996 WL 187586, (Tenn. Ct. App. M.S. Apr. 19, 1996). Under the facts in *Cadorette*, a student volunteered to stand on a table and model for a high school class. After a few minutes, the student fainted, fell from the table, and suffered a head injury. Although in that case we noted that the mere fact that modeling on tables was a widespread practice would not prevent a finding of negligence, we also determined that the teacher had used the same modeling technique throughout her teaching career of 25 years, and no similar accident had ever occurred. Although the teacher testified that "a child could get up there [on the table] and feel faint or something" we declined to find her negligent, stating that "her testimony contemplates the physical possibility of a fall, but not the *reasonable foreseeability* or *probability* required for liability to result." *Id.*, at *4.

-7-

Ms. Rathnow argues that there is a factual distinction between *Cadorette* and the present case in that in *Cadorette*, as the opinion notes, there was no evidence that the injured student had indicated to his teacher that he was in any way ill, whereas in this case, Ms. Rathnow requested to leave the classroom in the context of being shown the video. Ms. Rathnow indicates that given this distinction, the harm suffered by Ms. Rathnow, unlike the harm suffered by the student in *Cadorette,* was foreseeable. However, as we noted in *Cadorette* at *3, the degree of foreseeability required to establish a duty of care in a negligence case "decreases in proportion to the magnitude of the foreseeable harm" and "[a]s the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution" (*citing Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994)). We believe the gravity of possible harm is significantly higher and, therefore, the degree of required foreseeability is less when someone becomes ill while standing on a table. Evidence indicating that the student in *Cadorette* may not have been feeling well would have imposed a duty of care on the teacher in that case much sooner than the same information would have imposed such a duty upon Coach Allen under the circumstances in this case.

As the trial court acknowledges, Coach Allen asked Ms. Rathnow if she was all right and Ms. Rathnow responded that she was. Ms. Rathnow did not testify that she believed that she was feeling faint before she left the room, and no witnesses were presented to testify that Ms. Rathnow was exhibiting symptoms that indicated she was about to faint. The record indicates that Coach Allen has been a teacher for 20 years and has shown the subject video often. She testified without dispute that she has never had any student become ill watching the video and has never had students tell her that the video made them feel faint or nauseated. In fact, as the trial court also notes, "with 8,000 high school students, maybe this is the first time ever, at least to the knowledge of anybody in Knox County, this has ever happened." Further, there is no evidence presented that Ms. Rathnow has a propensity for fainting or that Coach Allen had any reason to be aware of such. To the contrary, Ms. Rathnow testified that she has never fainted at school before. Finally, Ms. Rathnow's own testimony shows that her demeanor in the class room did not indicate that she was at risk of fainting when she left to go outside:

> Q. The classroom that you were in is an outside portable classroom?
>
> A. Yes.
>
> Q. Are the desks in there the kind where the desk is attached to the chair?
>
> A. Yes.
>
> Q. Were you at the front of the classroom, or the back of the classroom where you were sitting?
>
> A. At the front, away from the door.

Q. Were you able to negotiate through the darkened classroom to the door?

A. It was darkened, but there was sun shining through, but yes.

Q. Did you have any problems operating the door?

A. No.

We further note the following undisputed testimony of Coach Allen regarding her observations of Ms. Rathnow at that time:

Q. Did you observe Ms. Rathnow when she left the room?

A. Yes.

Q. Did she appear to be walking steadily?

A. Yes.

Q. Did you observe anything that led you to have any belief that Ms. Rathnow was not well?

A. No.

As we have stated, teachers are not expected to insure the safety of students. The evidence in this case shows that the actions taken by Coach Allen were sufficient and proper under the circumstances as they appeared. The evidence does not support the conclusion that Ms. Rathnow's fainting and fall were reasonably foreseeable and that Coach Allen should have acted in conformity with that conclusion. Ms. Rathnow's fall was unfortunate; however, we do not deem it appropriate to impose liability on the defendants for negligence under the circumstances.

### *V. Conclusion*

For the reasons stated, we reverse the judgment of the trial court and dismiss this case, as consistent with our opinion herein. Costs of appeal are adjudged against the appellee, Brooke Rathnow b/n/f Rich and Diane Rathnow.

_____
SHARON G. LEE, JUDGE