IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 13, 2009 Session

SEAN LANIER, Individually and as Mother and Next of Kin of JANE DOE,
A Minor v. CITY OF DYERSBURG, ET AL.

Direct Appeal from the Circuit Court for Dyer County
No. 07-62     William B. Acree, Jr., Judge

No. W2009-00162-COA-R3-CV - Filed December 9, 2009

This is a negligence case filed by a student's mother against the city, as operator of the city school system, due to an alleged assault on the student by another student. The trial court granted summary judgment to the city, finding the assault unforeseeable as a matter of law. The mother appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Archie Sanders, III, Memphis, TN, for Appellant

Michael R. Hill, Pamela G. Vawter, Milan, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

This appeal arises out of an incident that occurred at Dyersburg Middle School on May 10, 2006. Jane Doe was a thirteen-year-old seventh grade student at Dyersburg Middle School at the time of the incident, and she was enrolled in special education classes. Jane Doe is developmentally challenged due to a genetic disease, and she functioned academically at a first grade level and socially at a third grade level.

At approximately 2:00 p.m., Jane Doe stopped at the restroom in route to her sixth period and final class of the day, which was taught by Coach Steve Wilder. Two other students were also in the restroom. One of those students was Jane Doe's friend, M.S., who was eleven years old and also a special education student. The third student noticed that Jane Doe and M.S. were in the same bathroom stall together, and she notified the girls' teacher, Coach Wilder. Upon questioning Jane Doe, Coach Wilder learned that M.S. had wiped Jane Doe's bottom with a tissue. He then telephoned both students' parents. Jane Doe's mother ("Mother") did not answer the telephone, so Coach Wilder left a message requesting that she call him. After his class ended, Coach Wilder called Mother again, and she answered. Coach Wilder informed Mother of the incident, and she proceeded to question Jane Doe about what happened. Allegedly, Jane Doe then informed Mother that M.S. had penetrated her with her fingers.

Mother filed this lawsuit, individually and as Jane Doe's next friend, against the City of Dyersburg.[1] The complaint alleged that the City "[n]egligently failed to properly supervise Plaintiff, Jane Doe, minor, and/or other students so as to prevent Plaintiff, Jane Doe, minor, from being sexually assaulted when it knew of the propensity of the attacker to engage in such conduct." The complaint further alleged that the City "[n]egligently failed to notify Plaintiff, Jane Doe's family in a timely manner of the sexual assault." The City filed an answer and a motion to dismiss and/or for summary judgment, claiming that the sexual assault was not foreseeable to the school system. The City submitted numerous affidavits and excerpts from depositions in support of its motion.

The City submitted portions of Mother's deposition testimony, in which she explained that she was not alleging that Jane Doe was not properly supervised. She conceded that Jane Doe did not need someone to go to the bathroom with her. She said that "[M.S.], on the other hand, given that she has sexually assaulted somebody before, yes, she should be monitored." Mother went on to explain her position regarding the alleged negligence by the City as follows:

> I have always contended when – I used to substitute teach. And whenever I took children to the bathroom, then I stood outside the doorway and I let so many boys go in at a time and so many girls go in at a time, because children go in the bathroom – you know, we all used to go to school. Children go in the bathroom and they play and do everything but use the bathroom, try to smoke, whatever the case might be,

---

[1] The Dyersburg City School System was also named as a defendant in the complaint, but it was subsequently dismissed because it is operated by the City of Dyersburg and is not a separate entity therefrom.

depending on the age range. And kids today are a little different than they were when I was coming along . . . .

But at any rate, I've always contended they need to have an adult when they're going to the bathroom present anyway. Just – I don't mean in the bathroom. They ain't got to have somebody standing up in there watching them but just out in the hallway. So if you hear something going on, you know, you can kind of get a hold on it immediately.

Mother later stated, "Well, if [M.S.] goes to the bathroom, I don't think it's a problem for a teacher to stand out, you know, and just be aware that [M.S. is] in the bathroom. You want to make sure if there's somebody else in there with her, that there's nothing going on in there."

The City also submitted the affidavits of the Dyersburg Middle School principal, the school system's Special Education Supervisor, Coach Wilder, and another special education teacher, all of whom stated that they had never personally witnessed or been advised of any behavior by M.S. that would cause them to suspect that she posed a threat of bodily harm or sexual assault toward other students, including Jane Doe. The Special Education Supervisor, Sandy Baker, stated that M.S. entered the Dyersburg City School System in the fall of 2005, some months prior to the May 2006 incident. M.S. was one of four children who had been removed from a foster home in a nearby county due to allegations of abuse by the foster parents. Ms. Baker explained that one of her responsibilities as Special Education Supervisor was to review all intake information and records of incoming special education students in order to determine their class placement, educational plans, and special precautions needed, if any. She stated that nothing in M.S.'s records, intake information, or any other information made available to her indicated that M.S. posed a risk of bodily harm to other special needs or general education students or suggested that M.S. had any physically or sexually aggressive tendencies. She said there was no information indicating that there was a need for M.S. to be supervised while going to the restroom. Ms. Baker stated that M.S. underwent a psychological evaluation in May 2005, and that it did not indicate any physically or sexually aggressive behavior. As such, M.S. was placed in a regular special education class and allowed to use the restroom without assistance or supervision. Ms. Baker stated that she learned during Mother's deposition, in May 2008, that Mother alleged that M.S. had sexually assaulted another foster child in a foster home prior to the incident involving Jane Doe. However, Ms. Baker said she was not aware of any such allegation prior to the deposition or at the time of the incident in 2006.

Coach Wilder testified by deposition about the incident. He said he was informed by a student that Jane Doe and M.S. were in the bathroom stall together just prior to the beginning of his 2:00 class. He said he called both girls out into the hallway to discuss the incident, then returned them to the classroom, retrieved their parents' telephone numbers, and called them from a classroom telephone. He said he called M.S.'s parents first, then tried unsuccessfully to contact Mother. He said he left a message for her, then tried again after school. He said after he spoke with Mother, and she discussed it with Jane Doe and called him back, she started "making accusations" and saying that M.S. was "known for this." However, Coach Wilder said that he was not aware of any allegations of a prior sexual assault by M.S. at the time of the incident.

-3-

Mother claimed that her phone did not ring when Coach Wilder called her the first time, but she conceded that he left a voicemail message for her. She estimated that the first call was placed somewhere between 1:30 and 2:00 p.m. She said Coach Wilder called again "thirty minutes to an hour" later, before she noticed that she had a voicemail message. She first said she received this call just minutes after Jane Doe arrived home from school at 2:30, but later she said that the second call might have been around 3:30. In response to the City's statement of undisputed material facts, Mother admitted that Coach Wilder first called her approximately twenty to thirty minutes after the incident occurred, after speaking with Jane Doe, M.S., and the witness, and telephoning M.S.'s foster mother.

Mother filed a response to the City's motion for summary judgment, contending that genuine issues of fact remained. Mother cited her own testimony that a teacher should have been outside the restroom monitoring the number of students who went in and out and listening for problems. She claimed that the City knew that M.S. was a special needs student who had been removed from a foster home due to allegations of abuse by the foster parents, and that "[d]espite this knowledge the Defendants allowed the student to go to the bathroom unattended." Mother also claimed that there was "proof of the record" that M.S. had previously sexually assaulted another child, but she acknowledged that the City denied knowledge of this fact. Nevertheless, Mother argued that an issue of material fact existed regarding whether the City knew or should have known of a prior assault by M.S. Mother did not submit any affidavits or deposition testimony in response to the City's motion for summary judgment, although she attempted to cite to pages of her deposition that were not in the record.

The trial court granted summary judgment to the City, finding that the City had presented evidence that it "did not know nor should have known of any violent, aggressive, or sexually abusive tendencies of the alleged aggressor against Jane Doe," and that Mother "offered no competent evidence to dispute this." The trial court concluded that the mere fact that M.S. may have been abused by her foster parents was insufficient to place the City on notice that M.S. might sexually abuse another child. As such, the court concluded that the alleged act by M.S. against Jane Doe was not foreseeable. Mother timely filed a notice of appeal.

## II. Issues Presented

On appeal, Mother contends that the trial court erred in granting summary judgment to the City. For the following reasons, we affirm the decision of the circuit court.

## III. Discussion

Mother asserts on appeal that the defendant failed to properly supervise and monitor the students, relying upon her testimony that a teacher should have been standing outside the bathroom door. "A claim of negligence requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

***Mason ex rel. Mason v. Metro. Gov't of Nashville & Davidson County***, 189 S.W.3d 217, 221 (Tenn. Ct. App. 2005) (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). There is a three-pronged test for proximate causation, of which foreseeability is an essential element:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

***Id.*** at 222 (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)). "Accordingly, proof of foreseeability is of critical importance in a negligence case[.]" ***Rathnow v. Knox County***, 209 S.W.3d 629, 633 (Tenn. Ct. App. 2006). If the injury giving rise to the cause of action could not have been reasonably foreseen or anticipated, then there is no proximate cause and thus no liability for negligence. ***Id.***; *see also* ***Mason***, 189 S.W.3d at 222 (citing *Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 436 S.W.2d 864, 867 (1969)). "[T]he foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred." ***Mason***, 189 S.W.3d at 222 (citing *McClenahan*, 806 S.W.2d at 775). However, the harm must have been foreseeable from the vantage point available to the defendant at the time that the allegedly negligent conduct occurred. ***Rathnow***, 209 S.W.3d at 633 (citing *Wingo v. Sumner County Bd. of Educ.*, No. 01A01-9411-CV-0051, 1995 WL 241327, at *3 (Tenn. Ct. App. M.S. Apr. 26, 1995)). In addition, "the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the defendant's power more probably than not would have prevented the injury." ***Id.*** at 633-34 (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)).

Schools, teachers, and administrators have a duty to exercise ordinary care for the safety of their students. ***Haney v. Bradley County Bd. of Educ.***, 160 S.W.3d 886, 897 (Tenn. Ct. App. 2004); ***Snider v. Snider***, 855 S.W.2d 588, 590 (Tenn. Ct. App. 1993). "Ordinary care is the care an ordinarily prudent person would take under the circumstances." ***Snider***, 855 S.W.2d at 590. "The extent to which a teacher must supervise the activities of his or her students must be determined with reference to the age and inexperience of the students, their maturity, and the dangers to which they may be exposed." ***Rathnow***, 209 S.W.3d at 634 (quoting *King by King v. Kartanson*, 720 S.W.2d 65, 68 (Tenn. Ct. App.1986)). Although some jurisdictions hold that student misconduct is to be expected, "Tennessee follows [a] more conservative foreseeability approach that student misconduct is not to be anticipated absent proof of prior misconduct." ***Mason***, 189 S.W.3d at 222 (citing *Kindred v. Bd. of Educ. of Memphis City Schools*, 946 S.W.2d 47 (Tenn. Ct. App. 1996); *Chudasama v. Metro. Gov't of Nashville & Davidson County*, 914 S.W.2d 922 (Tenn. Ct. App. 1995)). As the Court explained in ***Mason***:

> Society places a significant responsibility upon school officials to provide a safe environment for our children, the students. However, such a responsibility does not make our school officials insurers of the safety of its students. To the contrary,

-5-

teachers and school districts are not expected to be insurers of the safety of students. Moreover, Tennessee does not impose upon teachers the duty to anticipate or foresee the hundreds of unexpected student acts that occur in our public schools. This is particularly true when injury results from conduct that constitutes a radical departure from reasonable conduct.

189 S.W.3d at 222 (citations omitted).

Courts in Tennessee generally hold that summary judgment is inappropriate in negligence cases. *Roe v. Catholic Diocese of Memphis, Inc.*, 950 S.W.2d 27, 31 (Tenn. Ct. App. 1996) (citing *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 45 (Tenn. Ct. App. 1993)). Proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *Snider*, 855 S.W.2d at 592. In *Roe v. Catholic Diocese of Memphis, Inc.*, 950 S.W.2d 27 (Tenn. Ct. App. 1996), this Court affirmed summary judgment in favor of a preschool where a male student sexually assaulted another male student in the restroom, and the school presented affidavits showing that a sexual assault had never occurred in the school and that it had no reason to suspect that type of behavior from the student.

In this case, we similarly conclude that the trial court properly granted summary judgment to the City because M.S.'s actions were unforeseeable as a matter of law. The City presented the affidavits of various school officials who stated that they had not observed or been advised of any behavior by M.S. that would indicate that she posed a risk of harm to other students. Ms. Baker stated that she had reviewed all of M.S.'s records and intake information, including a recent psychological evaluation, and that none of that information suggested that M.S. had any physically or sexually aggressive tendencies or that she required supervision in the restroom. Mother seems to suggest that any special education student with a history of being abused needed supervision in the restroom. However, Jane Doe was also a special education student with a history of abuse,[2] and Mother conceded that Jane Doe did not need supervision in the restroom. In our view, all reasonable persons must agree that the injury in this case was, at most, a remote possibility, and it was certainly not a reasonably foreseeable probability. As the Court aptly stated in *Denson v. Benjamin*, No. 01A01-9810-CV-00571, 1999 WL 824346, at *6 (Tenn. Ct. App. Aug. 12, 1999),

It is often stated that hindsight is 20/20. However school administrators do not have the benefit of hindsight when they make decisions about the children in their care. Of course, the law defines negligence by the standard of foreseeability, not that of hindsight.

Considering all the circumstances, we find that the alleged sexual assault on Jane Doe, while unfortunate, could not have been reasonably foreseen or anticipated. Therefore, there is no proximate cause and thus, no liability for negligence.

---

[2] Mother testified that Jane Doe had been sexually abused in the past.

Mother argues on appeal that the City "should have been, but was apparently not, aware" that M.S. had previously assaulted another child. As previously discussed, Mother alleged in her complaint that the City "[n]egligently failed to properly supervise Plaintiff, Jane Doe, minor, and/or other students so as to prevent Plaintiff, Jane Doe, minor, from being sexually assaulted *when it knew of the propensity of the attacker to engage in such conduct.*" (emphasis added). The City then filed its motion for summary judgment, along with the affidavits of school officials who stated that they had not observed, nor did they have knowledge of, any behavior by M.S. that would indicate that she posed a risk of harm to other students. Ms. Baker testified that none of the information made available to her as Special Education Supervisor suggested that M.S. had physically or sexually aggressive tendencies. Ms. Baker and Coach Wilder acknowledged that Mother had alleged, after the incident, that M.S. had sexually assaulted another child, but they both stated that they had no knowledge of such allegations at the time of the incident. By submitting such evidence, the City affirmatively negated an essential element of Mother's claim (i.e., that the City knew of M.S.'s propensity to engage in assaultive conduct). *See* **Martin v. Norfolk S. Ry. Co.**, 271 S.W.3d 76, 84 (Tenn. 2008) (stating that "to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party"). In response, Mother, as the nonmoving party, was "required to produce evidence of specific facts establishing that genuine issues of material fact exist[ed]." *Id.* (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). Mother could satisfy that burden by: "(1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). In Mother's response to the motion for summary judgment, Mother conceded that the City denied having any knowledge of a prior sexual assault by M.S. Nevertheless, she contended that an issue of material fact existed concerning whether the City knew or should have known of the prior assault. As support for this assertion, Mother cited to pages of her deposition that were not included in the record before the trial court and do not appear in the record before this Court.[3] "For facts to be considered at the summary judgment stage, they must be included in the record[.]" **Green v. Green**, 293 S.W.3d 493, 513 (Tenn. 2009) (citing Tenn. R. Civ. P. 56.03). Therefore, we conclude that Mother failed to show that a genuine issue of material fact existed, and the trial court properly granted the City's motion for summary judgment.

Finally, we note Mother's assertion in the complaint that the City "[n]egligently failed to notify Plaintiff, Jane Doe's family in a timely manner of the sexual assault." Mother does not discuss this allegation on appeal. In any event, Mother admitted that Coach Wilder called her within twenty to thirty minutes of the incident occurring, and that he left a message because her telephone apparently did not ring. Although Mother did not return his call, Coach Wilder called her again

---

[3] According to Mother's memorandum, she testified during the deposition "that she was told by the DCS Investigator that Defendants were aware of the prior incident." However, there is nothing in the record to support this statement in the memorandum.

within an hour.  These facts would permit a reasonable person to reach but one conclusion – that the City was entitled to judgment as a matter of law on Mother's claim that the school failed to notify her of the assault in a timely manner.

## IV.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court.  Costs of this appeal are taxed to the appellant, Sean Lanier, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.