IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 9, 2008 Session

**RICKY LEE WILSON, and KIMBERLY WILSON, as guardians and next
friends of BRANDON WILSON, a minor, v. METROPOLITAN
GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY,
TENNESSEE, TOM MADDOX, TIMOTHY JOHN McKNIGHT and
JUSTIN LEJUAN DUNNIGAN**

**Direct Appeal from the Circuit Court for Davidson County
No. 06C-1720      Hon. Thomas W. Brothers, Judge**

---

**No. M2008-00327-COA-R3-CV - Filed January 27, 2009**

---

The minor plaintiff and his parents sued for damages for serious bodily injury resulting from an
assault, and at the conclusion of the trial the Trial Judge held the defendants liable for the injuries
and awarded damages.  The defendants have appealed, insisting the assault was not foreseeable.  We
affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY,
J., and SHARON G. LEE, SP.J., joined.

Sue B. Cain, Director of Law, The Department of Law of the Metropolitan Government of Nashville
and Davidson County, and Kevin C. Klein and Andrew D. McClanahan, Nashville, Tennessee, for
Appellant, Metropolitan Government of Nashville and Davidson County.

D. Andrew Saulters, Nashville, Tennessee, for Appellees, Ricky Lee Wilson and Kimberly Wilson,
as Guardians and Next Friends of Brandon Wilson.

# OPINION

Plaintiffs, Ricky Lee Wilson and Kimberly Wilson, as guardians and next friends of Brandon Wilson, brought this action against the Metropolitan Government of Nashville and Davidson County, Tom Maddox, Timothy McKnight, and Justin Dunnigan, asserting claims of personal injury and Government Tort Liability Act claims.

The Complaint identified Maddox as a school bus driver employed by Metro, and that Brandon Wilson was riding the bus on November 4, 2005, when he was attacked by McKnight and Dunnigan, resulting in severe personal injuries. He alleged that the two were guilty of aggravated assault and reckless endangerment, and that Maddox was guilty of negligence/recklessness in failing to take action to prevent harm to Wilson.

Defendant Metro moved to dismiss Tom Maddox, asserting that there was no need to bring official capacity claims against him, as they were redundant of the claims against Metro. The parties then entered an Agreed Order dismissing Maddox and summary judgment motions were overruled and a trial on the issues ensued.

Brandon Wilson was the first witness. He testified that in November 2005, he was a sophomore at Hunters Lane High School, and was riding the bus home on November 4, a Friday afternoon. He testified the bus was not crowded, and as a fire truck went by he said, "fire, fire", and Timothy McKnight turned around and told him to "shut the f___ up". He testified that McKnight then walked back to him, and Dunnigan followed. Wilson testified that he was scared, and had never spoken to the pair before. He said that McKnight began to pick on him and "put him in his place" for the next 3 or 4 minutes. He said that McKnight was cussing him and calling him names, and Wilson told him to just leave him alone and he didn't want to fight. Wilson testified that he told McKnight to go back to his seat and he did, and Wilson then turned around to talk to his friends about what had happened. Less than a minute later he saw Dunnigan walking back toward him. Wilson testified that one of his friends had his legs in the aisle and Dunnigan told him to move them, and when the friend refused, Dunnigan kicked his legs out of the way. Wilson testified that Dunnigan then hit him 3 times, and then got off the bus. He had not anticipated that Dunnigan was going to assault him. He than testified to the seriousness of his injuries.

Wilson testified that he had ridden Maddox's bus all semester and had seen students standing, throwing things and cussing, and that Maddox did nothing.

Robert Epley testified that he was a driver supervisor with Metro, and at the time of the incident, he was Maddox's supervisor. Epley testified he had previously driven a school bus, and had been involved in the industry for 10 years, and that his duty was to review the bus videotape if there was an incident, to determine if the driver acted appropriately. He testified that he had reviewed the tape in this case.

Epley testified that Metro had a handbook for bus drivers, which set out Metro's policies and procedures for drivers. He testified that students were not allowed to stand on the bus while it was in motion, and that if a driver noticed the same, he should ask the student to be seated. Epley testified that the driver was responsible for discipline and conduct on the bus, and had authority to assign students seats.

Epley testified that drivers were trained to glance at all their mirrors in a constant rotation, and that part of the rotation was to check on the students in their rearview mirror. Epley testified that Maddox should have been able to see Wilson where he was sitting on the day in question, and that if a driver noticed a student stand and move toward the back of the bus and begin picking on another student, the driver should ask the student to be seated, and if the student did not comply, the driver should stop the bus and address the situation.

Epley testified the tape in this case revealed that there were few students on the bus, and the driver should have been able to better watch them. Epley testified that if Maddox saw McKnight picking on Wilson, he should have asked him to be seated, and admitted that the tape showed that McKnight was standing and talking to Wilson for at least three minutes, which Maddox should have noticed. Epley testified that if Maddox saw McKnight pushing Wilson's head and putting his finger in his face, he should have appreciated the fact that Wilson might be in danger. Epley testified the tape showed that McKnight was quite a bit larger than Wilson, and that this also should have alerted Maddox to the fact that Wilson could be in danger.

Epley admitted that the tape showed that a female student sitting right behind Maddox was talking excitedly, and that you could hear her say, "ooh, they're going to go bust his head." Epley further testified that Maddox should have been able to hear her, and that if he heard her, this should have alerted him to the fact that there was going to be a fight, and he should have taken action. Epley testified that the tape showed that 40 seconds went by from the time Dunnigan got up and started toward Wilson, until he hit him. Epley testified that it was possible that Maddox would not have seen Dunnigan in that time frame, depending on the traffic and other factors. Epley testified that based on his review of the video, he felt Maddox could have been more proactive, and should have taken action to try and prevent what happened.

The driver Tom Maddox testified that he had been a bus driver since 1990. He testified that it was not uncommon for the kids to get up and move around on the bus, to swap seats to be with friends. He testified that he did not always tell the students to sit down, and if he did, they didn't always obey. He testified that violence on the bus was rare, that there was nothing to make him think that Dunnigan would attack Wilson on the day in question, and that he had not had any prior problems with McKnight. Maddox testified that he did not see Dunnigan as being involved in the first altercation between McKnight and Wilson, and that he did see McKnight leave his seat, but he could not constantly monitor him because he had to keep his eyes on the road. Maddox testified he did not think there was a problem until he saw the finger-pointing, but he did not say anything because he was concentrating on driving the bus, and did not "think it was that big of a

problem". He thought that when McKnight sat down, the problem was over.

Maddox testified that he did not hear a female student addressing him, and could not really hear what she was saying, and that he did not hear the student say anything about "they're going to bust his head". Maddox testified that he did not see Dunnigan get up and move toward the back of the bus right before his stop, and did not see him back there until right about the time he hit Wilson, and that the attack came as a complete surprise to Maddox.

Maddox admitted that he saw McKnight messing with Wilson on the day in question, and that it went on for 2 or 3 minutes, and that he saw the finger-pointing, and that he heard a girl sitting behind him saying something in a raised voice. Maddox admitted that he appreciated the fact that Wilson might be in danger, but he did not say anything, and reiterated that he did not see Dunnigan get up and move toward the back of the bus, but admitted that if it took forty seconds for him to do so, he probably should have seen him in that time frame.

The Trial Court entered judgment and granted the motion for default against McKnight and Dunnigan, since they had not answered or appeared, and the Court found that Metro owed a duty of care to Wilson, and that the bus driver was supposed to enforce discipline on the bus. The Court found that the attack was foreseeable, because when McKnight and Dunnigan approached Wilson the first time, McKnight engaged in aggressive physical contact. The Court found that a student sitting behind Maddox warned him, and that Maddox allowed kids to stand and walk around the bus in violation of policy. The Court found the driver owed a duty to protect Wilson from foreseeable harm, but failed to restrain McKnight or Dunnigan. The Court noted that the video showed that Maddox did nothing to control the students, and thus Metro breached its duty. The Court awarded compensatory damages of $8,309.00 for Wilson's medical bills, and awarded damages for the significant injuries in the amount of $35,000.00. Metro appealed.

The issues presented on appeal are:

1. Whether the Trial Court failed to apply Tennessee's conservative foreseeability standard when it concluded that Dunnigan's attack on Brandon Wilson was foreseeable?

2. Whether the Trial Court erred by finding that Dunnigan's attack on Brandon Wilson was foreseeable, despite the fact that both Wilson and the bus driver, Tom Maddox, testified that the attack was a complete surprise?

3. Is this appeal frivolous?

Appellants argue that the attack on Wilson was not foreseeable and there was no proximate cause. Appellants argue that Tennessee follows a conservative foreseeability approach, whereby student misconduct is not to be anticipated absent proof of prior misconduct, *citing Mason v. Metropolitan Government*, 189 S.W.3d 217 (Tenn. Ct. App. 2005).

-4-

We do not dispute that Tennessee follows the conservative foreseeability approach in cases of this nature, which simply means that rather than a showing that students this age have a tendency to fight or toward "roughhousing", there must be proof that the particular students involved were guilty of some prior misconduct of this kind. Id. Thus, in Mason, where a student was attacked with a razor from a cosmetology kit, and the claim was that the teacher/school negligently dispensed such kit to the aggressor, but there was no proof that the aggressor had any history of violence, and where she had received proper instruction as to the safe use and transportation of the cosmetology kit, had been tested on those instructions, and had been warned that an improper use of the kit or its contents could violate the zero tolerance policy, this Court held that there was no foreseeability and thus no proximate cause. *Id*.

Similarly, in the other cases relied upon by appellant, there was no showing of prior behavior that would have put a reasonable person on notice that the aggressor was going to act violently. *See Chaudasma v. Metro Gov't*, 914 S.W.2d 922 (Tenn. Ct. App. 1995); *Kindred v. Board of Education*, 946 S.W.2d 47 (Tenn. Ct. App. 1996).

In this case, however, the facts are distinguished from the above cases, because there was an immediate threat, and an interval where preventative measures could have been taken before the following act of aggression. In this case there was a larger student who was seen to be threatening and assaulting a smaller, weaker student and the tape shows that this behavior went on for at least three minutes without warning or other admonishment by the bus driver. The video also shows that during the entire time of this altercation, Dunnigan, McKnight's known friend, is standing or sitting right behind him and "backing him up". The boys return to their seats and then shortly thereafter, both boys stand and walked again to Wilson, and spent almost a minute standing in the aisle before Dunnigan suddenly attacked Wilson and then exited the bus. The evidence demonstrates that a reasonable person would know or should have known that Wilson was in danger prior to the attack.

Appellants argue because there was no prior history of trouble between these students, the attack was unforeseeable. In this case, however, the "prior" behavior which gave warning to Maddox that action needed to be taken was the first altercation between McKnight, Dunnigan and Wilson. The fact that the boys had no prior history of violent behavior does not excuse Maddox from taking action to prevent further actions between them, when it was clear that something was likely to happen. Here, a reasonably prudent person could have easily appreciated the danger of the situation and taken action to prevent it. Here the aggressors were threatening the victim, acting aggressively, and there was time and opportunity to act to prevent the attack on Wilson, but nothing was done. This attack was foreseeable, and we affirm the Trial Court's Judgment.

Appellees argue that Metro's appeal is frivolous, but this appeal was not so utterly devoid of merit as to justify this penalty. *See, Jackson v. Aldridge,* 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999).

We affirm the Judgment of the Trial Court and assess the cost of the appeal to the Appellants.

_____

_____ HERSCHEL PICKENS FRANKS, P.J.