IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2020 Session

## LEO LANDRY, ET AL. v. SUMNER COUNTY BOARD OF EDUCATION

**Appeal from the Circuit Court for Sumner County**
**No. 2014-CV-1149        Joe H. Thompson, Judge**

_____

### No. M2019-01696-COA-R3-CV

_____

This is a negligence case arising out of an injury suffered by a middle school student when a chair fell on his finger in his school's lunchroom. The trial court determined that summary judgment was warranted as a matter of law because there was insufficient evidence to demonstrate that a dangerous condition existed and because the incident was not foreseeable. We conclude that there is no dispute of material fact and that summary judgment in favor of the school district was properly granted; accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Benjamin K. Dean, Springfield, Tennessee, for the appellants, Leo Landry and Noah Landry.

Thomas B. Russell, Sarah L. Locker, and William C. Scales, Nashville, Tennessee, for the appellee, Sumner County Board of Education.

### OPINION

#### I. FACTUAL AND PROCEDURAL HISTORY

On the morning of August 11, 2014, Noah Landry, an 11-year old student at White House Middle School, was sitting with several of his friends around a table in the lunchroom, waiting for the school day to begin. On the day before, as was done each afternoon, the chairs had been placed upside down on the tables to enable the custodial staff to clean the room; each morning, the students would take down a chair to sit in while they waited for the bell to ring for school to start. On this morning, when the bell

rang, Noah rose from his chair but did not realize that one of the straps on his backpack was wrapped around one of the legs of his chair. As he stood, his leg caught on his backpack strap, causing him to lose his balance and fall to the floor; as he fell, he pushed his chair away from him and into a chair that was still upside down on another table. That chair fell off the table and landed on Noah's right hand, severing the tip of his ring finger. Noah's parents were called, and he was taken for medical care; the tip of his finger could not be reattached.

Noah's father brought suit against the Sumner County Board of Education on Noah's behalf, pursuant to the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated section 29-20-101, *et seq.*, ("the GTLA"), asserting that the Board and its agents' negligence caused Noah's injury and seeking $125,000 in damages for his pain and suffering, medical expenses, and loss of enjoyment of life. The complaint alleged that "the chair which fell and placement of the same was unsafe, dangerous, and hazardous in nature and condition"; that the Board created the dangerous condition or knew of its existence long enough; and that "the [Board] should have discovered and corrected and/or warned of said condition." The complaint also alleged:

> 7. That the [Board], by and through its agents, servants, and employees, was under an obligation to see that the chair in issue was secured such that it would not fall on schoolchildren, and make said chair safe for schoolchildren, including [Noah]. The [Board] knew, or should have known, to exercise reasonable care, and that schoolchildren such as [Noah], could be injured as a result of such a hazardous condition. [Noah] was not aware of the dangerous, hidden hazard presented by the chair.
>
> 8. The [Board], at all times material hereto, was negligent as set forth above, and that any negligent acts and or omissions of the agents of the [Board] are imputed to the [Board], and such negligent acts and/or omissions of the [Board] as imputed to the [Board], caused injury and damages to [Noah].
>
> 9. The [Board] owed a heightened duty of care to [Noah] by virtue of [Noah]'s status as a student at said school. The [Board] breached its duty of care to its students and [Noah] as follows:
> a. By placing the chair in a place and condition that caused a risk of the chair falling and injuring a student;
> b. By failing to secure the chair or otherwise warn students and [Noah] that the chair could fall or posed a risk of children being injured;
> c. By failing to properly and adequately train and/or instruct its employees as to the proper safe methods by which to maintain said school premises; and,
> d. by failing to take reasonable precautions to otherwise protect its

students and [Noah] from injury and harm as a result of said defective condition.

10. Such failures and omissions of the [Board], and its agents and employees, are the direct and proximate cause of the accident averred and the injuries and damages sustained by [Noah].

The Board answered the complaint, denying liability; it subsequently moved for summary judgment, arguing:

Because Noah's injury was not foreseeable, Defendant was not negligent, as a matter of law, and because Defendant did not have actual or constructive notice of a dangerous or defective condition, Defendant cannot be liable to Plaintiffs under a premises liability theory, as a matter of law. Therefore, Defendant is entitled to summary judgment as to each of Plaintiff's claims against it.

The Board filed a statement pursuant to Tennessee Rule of Civil Procedure 56.03, setting forth 22 material facts which the Board asserted were undisputed; the statements were supported by the deposition testimony of school custodians Janie Campbell and Debbie McDaniel, as well as that of Noah and his parents. Plaintiffs admitted 20 statements, objected to one as stating a legal conclusion and unsupported by citation to the record, and disputed one. Plaintiffs also filed a statement of 31 additional facts, relying on the depositions of Ms. McDaniel and Ms. Campbell; the Board disputed nine of the facts. After a hearing, the trial court entered an order granting summary judgment to the Board, holding that "Plaintiffs' claim constitutes a premises liability claim" and that "there is insufficient evidence at this stage of the litigation to demonstrate that a dangerous condition existed, and the probability of an occurrence such as Noah's was not foreseeable."

The Plaintiffs appeal, articulating the following issue for resolution: "Whether the trial court erred in granting summary judgment to the Appellee."

## II. ANALYSIS

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. In *Rye v. Women's Care Ctr. of Memphis, MPLLC*, our Supreme Court adopted the following standard when considering a motion for summary judgment filed by the party who does not bear the burden of proof at trial, as is the Board in this case:

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. . . . [S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. . . .

477 S.W.3d 235, 264-65 (Tenn. 2015), *cert. denied,* 136 S. Ct. 2452, 195 L. Ed. 2d 265 (2016). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. July 22, 2019) (quoting *Rye*, 477 S.W.3d at 265)).

This court reviews the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye,* 477 S.W.3d at 250 (citing *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

At the outset of our analysis, we address the Board's argument that the Plaintiffs have waived all issues in this appeal because their statement of the issues is "not narrowly focus[ed]" and "fails to specifically identify any trial court errors as Tenn. R. App. P. 27(a)(4) requires."[1] The Board contends that Plaintiffs' statement of the issue does not comply with the rule because the statement is too general, forcing this court to "sift through Plaintiffs' brief and the trial court's order to deduce the basis/bases upon which Plaintiffs appealed." We respectfully disagree. The complaint alleged a claim for

---

[1] Tennessee Rule of Appellate Procedure 27(a)(4) states, "The brief of the appellant shall contain . . . [a] statement of the issues presented for review."

general negligence as well as a claim for premises liability. The trial court construed the complaint as bringing only a premises liability claim and granted summary judgment to the Board on that ground; in so doing, however, the court addressed elements of both claims. Because we review the resolution of the motion for summary judgment *de novo*, Plaintiffs' wording of their issue does not prevent us from reviewing the entirety of the evidence pertinent to the motion and the legal issues presented.

The suit was brought pursuant to the GTLA, about which this Court has stated:

> Due to the doctrine of sovereign immunity, tort claims may not be brought against the State of Tennessee or other governmental entities without their consent. *Hawks v. City of Westmoreland,* 960 S.W.2d 10, 14 (Tenn. 1997). The GTLA reaffirms this rule of immunity for local governmental entities and provides the exceptions under which a local government may be sued.

*Butler v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2012-01863-COA-R3-CV, 2013 WL 3227570, at *2 (Tenn. Ct. App. June 21, 2013). Governmental immunity from suit is removed for injuries caused by the "dangerous or defective condition of any public building" owned and controlled by that governmental entity. Tenn. Code Ann. § 29-20-204(a). Immunity from suit is also removed for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code Ann. § 29-20-205. In the context of injuries suffered while on school property, this Court has held:

> Society places a significant responsibility upon school officials to provide a safe environment for our children, the students. However, such a responsibility does not make our school officials insurers of the safety of its students. To the contrary, teachers and school districts are not expected to be insurers of the safety of students.

*Mason ex rel. Mason v. Metro. Gov't of Nashville & Davidson Cty.*, 189 S.W.3d 217, 221 (Tenn. Ct. App. 2005).

## A. Premises Liability

The allegations of the complaint state a premises liability claim, about which this Court has held:

> ". . .[T]he Governmental Tort Liability Act, Tenn. Code Ann. § 29–20–101 *et seq.,* . . . basically codifies the common law obligations of owners and occupiers of property embodied in premises liability law, which generally requires the exercise of ordinary care and diligence in maintaining the

premises, including an affirmative duty to protect against dangers of which one knows or which, with reasonable care, might discover.

*Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002) (internal citations omitted). The elements of a such a case are:

> (1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached its duty to eliminate the condition or its duty to warn of the condition.

*Butler*, 2013 WL 3227570, at *2. "Whether a particular site is defective, unsafe or dangerous is a question of fact." *Lindgren,* 88 S.W.3d at 584.

The Board contended that the Plaintiffs could not establish the second and third elements of a premises liability claim, specifically, that the chair or the positioning of the chairs on tables constituted a dangerous or defective condition and that the Board had notice that the positioning of the chairs constituted a dangerous condition. The Board cited Noah's testimony that he had been in the lunchroom on prior occasions where the chairs were upside down on the tables and had no concerns about the upside-down chairs causing an injury, the testimony of Noah's father that he had never expressed a concern about the chairs being upside down on the lunchroom tables, the testimony of Ms. Campbell and Ms. McDaniel that there had been no injuries related to the placement of the chairs before Noah's injury, and the testimony of Noah and his mother that the sequence of events that led to Noah's injury was an accident.[2] This evidence negated the second element of the claim and shifted the burden to Plaintiffs to produce evidence which established a genuine issue of material fact for trial and preclude summary judgment in favor of the Board.

In their response to the Board's statement, Plaintiffs objected to one statement as being a legal conclusion and unsupported by citation to the record and disputed one.[3]

---

[2] The statement addressing Noah's Mother's deposition testimony states:

> 19. Pauline Landry, Noah's mother, also believes the entire sequence of events, including Noah's injury, was an accident. Indeed, Pauline calls Noah's injury "an absolute accident" and "an unfortunate accident." [citation omitted].
> RESPONSE: Admitted that the subject incident was the result of an accident.

[3] The disputed statement was:

> 3. Typically, the chairs remained in their upside down position until the next school day,

- 6 -

Plaintiffs also filed a statement of 31 undisputed facts, of which the Board disputed several. The undisputed facts establish, *inter alia*, that there was no policy with respect to the placement of the chairs while the room was being cleaned; that the custodial staff had seen chairs knocked off or come loose and fall to the floor before the incident, that "chairs being upside down on the table. . . can easily fall off the table if someone bumped into them"; that students bump into and knock down the upside-down chairs sometimes; and that there would be no risk of the chairs falling off the tables if the custodial staff took the chairs down after cleaning the floor.

The evidence put forth by Plaintiffs does not create a genuine issue of fact as to the second element of their premises liability claim. In the trial court and in their brief on appeal, Plaintiffs concede that "the Defendant correctly suggests that a chair in and of itself could not and does not present an unsafe, dangerous or defective condition"; they argue that "the precarious manner in which the chairs were and are placed upside down on the tables and their history of being knocked loose that . . . establishes the placement of the chairs upside down presents an unsafe, dangerous, or defective condition." Plaintiffs, however, did not put forth any proof, expert or otherwise, to show that the manner in which the chairs were placed on the tables was precarious or that the chairs themselves were defective, dangerous or in any way unsafe. Neither did Plaintiffs rebut the Board's proof that Noah's injury occurred when the strap on his backpack caught on the leg of the chair in which he was sitting, causing him to lose his balance.[4] On the

---

when someone (i.e. students or White House Custodial Staff) lowered the chairs to the ground. (See Debbie McDaniel Deposition Transcript attached hereto and marked as Exhibit B, 9:17-10:2).

RESPONSE:
Denied as stated to the extent the above indicates "someone" being the custodial staff "typically" took the chairs down in the morning. The relevant testimony establishes that the children/students were primarily if not exclusively being utilized to place the chairs back down the next morning, before or at breakfast in the cafeteria, not the custodial staff. It is admitted for purposes of summary judgment, that the children/students were delegated the task of placing the chairs back down on the floor the next morning and that this was occurring at the time of the accident, and that such appears to continue at this time despite the Plaintiff's injuries. See Campbell: 21:18-19 ("So the kids are responsible for taking the chairs off the tables correct? A: yes")

We do not consider this dispute to be as to a material fact, as the question of who took down the chairs does not bear on the issue of whether the chairs themselves or their placement were defective or dangerous or whether the Board and its agents were on notice that the chairs' placement could have caused Noah's injury.

[4] Even if prior injuries had occurred due to the falling of chairs, that alone would not be sufficient to prove that the chairs' placement constituted a dangerous or defective condition. *See Neal v. Fayette Cty. Bd. of Educ.*, No. 02A01-9412-CV-00271, 1996 WL 243896, at *2 (Tenn. Ct. App. May 9, 1996) ("The fact that two previous injuries occurred, standing alone, is insufficient to establish a dangerous or

record presented, the mere fact that the chair could fall when it was bumped does not constitute a dangerous or unsafe condition.

Because Plaintiffs did not put forth proof showing that there is a genuine issue for trial pertaining to the dangerous or defective nature of the chair or the manner in which it was placed on the table, they cannot prevail on this cause of action, and consideration of the third element of the claim, actual or constructive notice, is pretermitted.

## B. Negligence

Five elements must be established to prevail on a claim of negligence: 1) a duty of care owed by the defendant to the plaintiff; 2) breach of duty of care by the defendant; 3) injury or loss; 4) causation in fact; and 5) proximate, or legal, cause. *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013).

The Board premised its motion for summary judgment on the contention that Noah's injury was not foreseeable, a question which impacts the elements of duty and proximate causation. *See Richardson v. Trenton Special Sch. Dist.*, No. W2015-01608-COA-R3-CV, 2016 WL 3595563, at *5 (Tenn. Ct. App. June 27, 2016) (A "debate [exists] as to whether foreseeability in negligence law is a question of duty, which is a matter of law; a question of breach, which is a mixed question of law and fact; or a question of proximate cause, which is a question of fact.").

With respect to duty, a court must first establish that the risk of injury is foreseeable, which is determined by examining whether "a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.'" *Downs ex rel. Downs v. Bush,* 263 S.W.3d 812, 820 (Tenn. 2008) (quoting *West,* 172 S.W.3d at 551). There is no dispute that a duty is imposed on the Board to exercise ordinary care for the safety of students, including safeguarding them from reasonably foreseeable dangerous conditions, which includes the dangerous acts of fellow students. *Richardson v. Trenton Special Sch. Dist.*, No. W2015-01608-COA-R3-CV, 2016 WL 3595563, at *6 (Tenn. Ct. App. June 27, 2016); *Roberts v. Robertson Cty. Bd. of Educ.*, 692 S.W.2d 863 (Tenn. Ct. App. 1985). With respect to proximate cause, this Court has held, "Foreseeability is an essential element of proximate causation, which, in turn, is essential to a negligence claim." *Santiago v. Cooper,* No. W2003-01882-COA-R3-CV, 2004 WL 1159644, at *4 (Tenn. Ct. App. May 18, 2004) (citing *Roberts*, 692 S.W.2d at 871).[5]

---

defective condition, especially when the previous injuries occurred solely due to the students' misuse of the [object causing the injury].")

[5] The Tennessee Supreme Court identifies foreseeability as part of a three-part test in determining proximate causation:

To establish that Noah's injury was not foreseeable, the Board relied on Noah's testimony that he had no concerns about the upside down chairs injuring anyone and the testimony of Noah, his father, Ms. Campbell, and Ms. McDaniel that there had been no injuries related to the placement of the chairs before Noah's injury. This evidence satisfied the Board's burden and shifted the burden to the Plaintiffs to show that there was a dispute of fact as to whether the injury was foreseeable.

Plaintiffs assert that the harm was foreseeable because "[t]he custodial staff knew and were aware of the propensity of the upside down chairs to be inadvertently knocked loose causing the chairs to fall off the table." The material relied upon by Plaintiffs in their response to the Board's statement of undisputed facts and in Plaintiffs' statement of additional facts establish that there was no school policy in place with respect to the placement of the chairs for cleaning; that the chairs can fall off the table if someone bumped into them; that students bump into and knock down the upside-down chairs sometimes; and that there would be no risk of the chairs falling off the tables if the custodial staff took the chairs down after cleaning the floor.

It is undisputed that there were no reported injuries related to chairs that had been placed upside down on the lunchroom tables falling prior to Noah's injury; this fact militates against a finding that an incident like the one that resulted in Noah's injury was reasonably foreseeable or probable. The undisputed evidence shows that Noah fell as a result of his backpack strap catching his leg as he stood from a seated position, causing him to lose his balance and fall. As he fell, he pushed his chair away from him to avoid falling on it, and inadvertently pushed his chair into one of the chairs resting upside-down on top of another table, causing that chair to fall and land on his right ring finger. The evidence put forth by Plaintiffs could not lead a rational trier of fact to find that the injury was foreseeable. Thus, Plaintiffs cannot prove proximate causation or that the Board had a duty to safeguard him Noah from the specific harm he suffered; summary judgment was warranted.

---

(1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Richardson,* 2016 WL 3595563, at *6 (Tenn. Ct. App. June 27, 2016) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)).

### III. Conclusion

The Board is entitled to summary judgment as to each of Plaintiffs' claims; accordingly, we affirm the judgment of the trial court.


_____
RICHARD H. DINKINS, JUDGE